**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

**ALYSON SLAUGHTER,** *et al.,*

**Plaintiffs,**

v.

**NATIONAL RAILROAD PASSENGER
CORPORATION d/b/a AMTRAK,**

**Defendant.**

**Case No. 1:19-cv-02920-APM**

**REPLY IN SUPPORT OF DEFENDANT'S
MOTION TO COMPEL ARBITRATION AND DISMISS THE COMPLAINT**

I.    **INTRODUCTION**

Selectively citing facts and relying on inapposite law, Plaintiff Alyson Slaughter attempts to confuse the issues enough to avoid her obligation to arbitrate her claims against Amtrak, but the following facts remain clear and uncontradicted.  Plaintiff does not dispute that she ***specifically agreed*** to the Arbitration Agreement when she purchased train tickets.  Moreover, by its terms, the Arbitration Agreement, which is governed by the Federal Arbitration Act ("FAA"), applies to "all claims" between Plaintiff and Amtrak, explicitly including "any claims for discrimination and failure to accommodate," which specifically encompasses Plaintiff's claims for disability discrimination under the Americans with Disabilities Act and the Rehabilitation Act.  Plaintiff also does not dispute that the Arbitration Agreement specifically precludes this class action.  Therefore, though Plaintiff may continue to pursue her individual claims for discrimination, she must pursue them in individual arbitration as she agreed, not before this Court.

Not only are Plaintiff's arguments to the contrary without merit, they must be made to the arbitrator under the parties' clear and unmistakable delegation clause.  The only argument Plaintiff

makes against the enforceability of the Arbitration Agreement itself is that it is illusory.  It is not, but in this district, whether a contract is illusory goes to enforceability, not formation.  Because Plaintiff does not (and cannot) deny that there was a meeting of the minds when she affirmatively accepted the Terms of Conditions, including the Arbitration Agreement, Plaintiff's argument that the Agreement is unenforceable because Amtrak has allegedly reserved the right to later modify or cancel the requirement to arbitrate falls within the gateway issues the parties delegated to the arbitrator.  Even if the Court considers the argument, the result is the same—the Arbitration Agreement is not illusory because Amtrak's performance under it is not optional.  Plaintiff selectively cites to other, separate sections of the Terms and Conditions without making it clear that the right to modify is ***not*** included in the Arbitration Agreement.

Plaintiff's only other argument is that the Terms and Conditions, including the Arbitration Agreement, do not apply to her claims.  Instead, citing to older and narrower terms and other parol evidence, she argues that the website's Terms of Use and the mobile application's End User License Agreement ("License Agreement") apply.  But again, there is no dispute that Plaintiff agreed to the Arbitration Agreement, so her argument is actually that the Agreement does not cover her claims *despite* her assent to it.  This issue is also expressly delegated to the arbitrator.

Even if the Court considers this argument, it too fails.  On their face, the Terms and Conditions were implemented later in time than the Terms of Use and the License Agreement, and unlike those earlier agreements, Plaintiff actually agreed to the Terms and Conditions and the Arbitration Agreement.  Moreover, Plaintiff's tortured suggestion that her claims are not covered by the Arbitration Agreement is nonsensical.  By its terms, the Agreement applies broadly to ***all claims*** between Amtrak and Plaintiff, and specifically to claims involving ***discrimination*** and the failure to ***accommodate***.  Plaintiff has sued Amtrak alleging that it discriminated against her and

other visually impaired passengers, making it impossible for them to access accurate information on Amtrak's websites and mobile application relating to Amtrak's travel services. The fact that the accommodations she seeks involve the website are of no matter.

The Arbitration Agreement should be enforced according to its terms, and Plaintiff must pursue her claims in individual arbitration.

## II.    PLAINTIFF MUST MAKE HER ENFORCABILITY ARGUMENT TO THE ARBITRATOR, BUT EVEN IF THE COURT CONSIDERS IT, THE ARBITRATION AGREEMENT IS NOT ILLUSORY

In Amtrak's Motion, it demonstrated that Plaintiff agreed to the Terms and Conditions, which include an Arbitration Agreement requiring individual arbitration of all claims between Amtrak and Plaintiff, while purchasing train tickets through Plaintiff's websites and mobile application. (Def.'s Mem. in Supp. of Mot. to Compel 3-5; Tewari Decl. ¶¶ 5-9, Ex. A ("Terms and Conditions"), ECF No. 6.) As part of the Arbitration Agreement, the parties also agreed to delegate the authority to consider the gateway issues to the arbitrator. (*See* Tewari Decl. Ex. A at 19-20.) Plaintiff does not dispute that she agreed to the Arbitration Agreement, or that, by its terms, it specifically covers claims for discrimination and failure to accommodate.

In fact, Plaintiff's only argument specifically directed against the Arbitration Agreement itself is that it is illusory. Because this argument goes to the enforceability of the Agreement, under the parties' delegation clause, only the arbitrator has the authority to consider it. Even if this Court considers the substance of the argument, it is without merit because Plaintiff has failed to point to any evidence that Amtrak can avoid arbitration.

### A.    Under the Delegation Clause, Only the Arbitrator Has the Power to Determine Whether the Arbitration Agreement Is Illusory

Where the parties "clearly and unmistakably" delegate the consideration of gateway issues to the arbitrator, a court is without power to consider arguments related to them. *Henry Schein,*

*Inc. v. Archer & White Sales, Inc.*, 139 S.Ct. 524, 526 (2019).  "An agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other." *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 70 (2010).  Here, the parties expressly agreed that the arbitrator "shall have ***exclusive authority*** to resolve any dispute relating to the validity, applicability, enforceability, unconscionability or waiver of this Arbitration Agreement, including, but not limited to any claim that all or any part of this Arbitration Agreement is void or voidable."[1]  (Tewari Decl. Ex. A at 19 (emphasis added); *see also id.* at 19-20 (incorporating AAA Rules and its delegation clause).)

Plaintiff does not dispute that this clause is a clear and unmistakable delegation of authority to the arbitrator to decide these gateway issues.  Instead, she claims that the delegation clause "does not apply" to her illusoriness argument because no agreement was ever formed.  However, this is not supported by law.

While some courts in this district have held that a court must consider whether an agreement was formed before enforcing a delegation clause, the issue of "formation" for the court is narrow.  *See RDP Techs., Inc. v. Cambi AS*, 800 F. Supp. 2d 127, 141 (D.D.C. 2011).  Under District of Columbia law, a district court must find only two prongs to determine that a contract exists: (1) there must be an agreement as to all material terms, and (2) an intention of the parties to be bound.  *Id.* (citing *Kramer Assocs. v. Ikam*, 888 A.2d 247, 252 (D.C. 2005)).  Stated another way, there must be a "meeting of the minds," which "takes the form of an offer or proposal by one party followed by an acceptance by the other party."  *Id.* (citing Restatement (Second) of Contracts

---

[1] The parties reserved for the Court the authority to rule on the enforceability of the Class Action Waiver, but Plaintiff makes no argument that the Class Action Waiver is unenforceable.  (Tewari Decl. Ex. A at 19-20.)

§ 22 (1981)); *see also Northland Capital Corp. v. Silver*, 735 F.2d 1421, 1428 n.10 (D.C. Cir. 1984) ("To have mutual assent . . . one party must have accepted by word or deed an offer from the other.").  "Once an offer is made, the offeree possesses the power of acceptance and can bring the contract into existence by accepting the offer." *RDP Techs.*, 800 F. Supp. 2d at 141.

Plaintiff makes no argument that there was no meeting of the minds here.  Plaintiff does not dispute that she affirmatively clicked that she had read and understood the Terms and Conditions, including the Arbitration Agreement, at least nine times when she purchased train tickets.  (Def.'s Mem. in Supp. of Mot. to Compel ¶ 7.)  As demonstrated more thoroughly in Amtrak's Motion and undisputed by Plaintiff, this type of electronic acceptance is an enforceable manifestation of assent.  *See Selden v. Airbnb, Inc.*, No. 16-CV-00933 (CRC), 2016 WL 6476934, at *4 (D.D.C. Nov. 1, 2016); *see also, e.g.*, *Hancock v. Am. Tel. & Tel. Co.*, 701 F.3d 1248, 1256 (10th Cir. 2012); *Bachewicz v. JetSmarter, Inc.*, No. 18-CV-62570, 2019 WL 1900332, at *2 (S.D. Fla. Apr. 29, 2019).

Thus, there is no dispute that the Arbitration Agreement was formed.  Under District of Columbia law, whether a contract is illusory is considered under enforceability, not formation.  *See Mitchell v. Craftworks Restaurants & Breweries, Inc.*, Case No. 18-879, 2018 WL 5297815, *8 (D.D.C. Oct. 25, 2018) (where the defendant requested that the district court, rather than the arbitrator, decide the gateway issues, finding that plaintiff "failed to establish a genuine dispute as to the Agreement's formation," before separately considering whether the contract was illusory and unenforceable); *Shatteen v. Omni Hotels Mgmt. Corp.*, 113 F. Supp. 3d 176, 181 (D.D.C. 2015) (considering whether a contract was illusory in the context of substantive unconscionability, not formation).  Here, the Arbitration Agreement, by its terms, requires mutual arbitration, and there is no question that an agreement was formed.  (Def.'s Mem. in Supp. of Mot. to Compel 20

(Agreement is "[m]utal" and "applies to all claims, disputes or controversies, past, present, or future" and "without limitation, to claims Amtrak may have against You and claims You may have against Amtrak").  As such, the Court's analysis regarding formation is simple – a binding Arbitration Agreement was formed.  Issues of whether a contract is illusory are to be considered by the arbitrator.

Notably, this is not the law in Texas as the First Circuit applied it in *National Federation of the Blind v. The Container Store, Inc.*, 904 F.3d 70 (1st Cir. 2018), a case heavily relied on by Plaintiff.  In that case, the circuit court specifically found that "pursuant to Texas law the issue of illusoriness goes to formation (and not to validity or enforceability)."  *Id.* at 87-88.  Plaintiff's argument that the Court should decide this issue before enforcing the delegation clause is without merit or precedent in this jurisdiction.[2]  Because the Court is without power to override the parties' delegation agreement, Plaintiff must make this argument to the arbitrator.  *Henry Schein*, 139 S.Ct. at 525.

Moreover, even without the delegation clause, it is settled that challenges to the agreement as a whole are for the arbitrator.  *See Buckeye Check Cashing v. Cardenga*, 54 U.S. 440, 449 (2006); *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 406-07 (1967). As discussed below, the right to modify provisions that Plaintiff discusses are not included in the Arbitration Agreement; rather, they are from other discrete sections, and Plaintiff is arguing they

---

[2] Plaintiff's citation to *Davis v. Joseph J. Magnolia, Inc.*, 640 F. Supp. 2d 38, 42 (D.D.C. 2009) is even less helpful because there was no delegation clause in that case.  *Davis* was also decided before *Rent-A-Center*, so to the extent it can be read to permit a challenge to the contract as a whole to prevent the court from enforcing an arbitration agreement, it may not be followed.  *See Rent-A-Ctr*, 561 U.S. at 70-71 ("Thus, a party's challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate. As a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract." (internal quotation marks omitted) (citing *Buckeye*, 546 U.S. at 445).)

apply to the Arbitration Agreement.  Thus, because Plaintiff necessarily challenges the Terms and

Conditions as a whole, this challenge is for the arbitrator.  *See In re Cox Enters., Inc. Set-top Cable

Television Box Antitrust Litig.*, 835 F.3d 1195, 1212 (10th Cir. 2016) (under the "clear commands

of the Supreme Court," holding that plaintiffs' argument that the contract was illusory was for the

arbitrator); *cf. The Container Store*, 904 F.3d at 85 (refusing to consider defendant's argument that

plaintiff's challenge that the entire contract was illusory was for the arbitrator only because it was

made for the first time on appeal and not preserved).

> **B.**     **The Arbitration Agreement Is Not Illusory**

Even if the Court considers this argument, despite the parties' clear agreement to reserve

it for the arbitrator, the Arbitration Agreement is not illusory because Amtrak has not reserved the

right to cancel or modify it.  Though Plaintiff refers to a "modification provision," Plaintiff has

misleadingly strung together language from separate and discrete portions of the Terms and

Conditions to suggest that Amtrak has reserved the right to unilaterally modify the Arbitration

Agreement.   (Pl.'s Opp'n 15, ECF No. 9 (citing Tewari Decl. Ex. A at 19 ("Disclaimer of

Liability"), 22  ("Amtrak Guest Rewards Program Terms & Conditions"), 24  (same).)

Significantly, there is no such provision in the Arbitration Agreement.  (*Cf.* Tewari Decl. Ex. A at

19-20 ("Arbitration Agreement").)  Read in context, it is clear that the right to modify applies only

to other discrete portions of the Terms and Conditions, addressing polices and a reward program,

rather than the Arbitration Agreement.[3]

---

[3] Plaintiff's suggestion that Amtrak already has modified the Arbitration Agreement is misleading
and inaccurate.  (*See* Pl.'s Opp'n 15 n.5 (referring to a new "iteration of the Arbitration Provision
[sic]").)  On December 12, 2019, Amtrak added some "Arbitration Agreement facts."  These
general points are under the larger heading "Arbitration Agreement," but they are under separate
subheadings, titled "Our Commitment to Customers," "Your Legal Rights – Protected,"
"Benefits," and "Myths & Misunderstandings."  These facts address general information about
arbitration, but do not change anything about and are not part of the enforceable Arbitration
Agreement, which remains unchanged in a standalone section.  (*Compare* Tewari Decl. Ex. A at

Plaintiff first cites to language giving Amtrak the right to "change its policies without notice."  But the Arbitration Agreement is never referred to as a "policy," and there is nothing to suggest it would be considered such.  Rather, the word "policy" is used elsewhere in the Terms and Conditions to refer to policies relating to matters such as refunds, baggage and unaccompanied minors.

Further, Plaintiff has omitted the heading and other surrounding content from the section where this language appears, thus completely omitting the context.  This language is included in the section headed, "Disclaimer of Liability," and the provision states:

### Disclaimer of Liability

Amtrak's fares, time schedules, equipment, routing, services and information (hereinafter "Amtrak services") are not guaranteed and are provided "as is" without any warranties of any kind, either express or implied, and Amtrak disclaims all warranties, express or implied.

Amtrak reserves the right to change its policies without notice.

Amtrak further specifically disclaims liability for any inconvenience, expense, or damages, incidental, consequential, punitive, lost profits, loss business or otherwise, resulting from errors in its timetable, shortages of equipment, or due to delayed trains, except when such delay causes a passenger to miss an Amtrak train guaranteed connection. When a guaranteed Amtrak train connection is missed, Amtrak will provide passenger with alternate transportation on Amtrak, another carrier, or provide overnight hotel accommodations, at Amtrak's sole discretion, but only when such circumstances resulted from the actions of Amtrak and this shall constitute Amtrak's sole liability and passenger's sole and exclusive remedy.

Amtrak also disclaims any liability for the products and/or services of Amtrak's advertisers, business partners, sponsors, suppliers, licensors and agents to the extent permissible under the law and Amtrak shall only be responsible for the rail transportation services that it provides.

(Tewari Decl. Ex. A at 19 ("Disclaimer of Liability").)  When read as a whole, this section focuses exclusively on disclaiming any warranties and guarantees related to the use of Amtrak's products

---

19-20 *with* https://www.amtrak.com/terms-and-conditions.html (last accessed Jan. 2, 2020).)

and services.  That is, the section provides that fares, schedules, and services can change at any time, and Amtrak will not be liable for any resulting liability.  Notably, none of these services represent contractual obligations by Amtrak, and this language clarifying the scope of its liability does not put the separate Arbitration Agreement in jeopardy.  It is within this context that the right to change "policies" must be read.

Plaintiff points to no evidence that this right to modify applies to the Arbitration Agreement.  In addition to the fact that the language appears only in the separate "Disclaimer of Liability" section, a reading that policies related to limiting liability includes the Arbitration Agreement would be inconsistent with settled law, since an agreement to arbitrate has ***nothing*** to do with limiting or disclaiming liability.  To the contrary, an arbitration agreement merely changes the forum to resolve a dispute, but it affirmatively does not impact a party's rights or duties. *See Nelson v. Insignia/Esg, Inc.*, 215 F. Supp. 2d 143, 148-49 (D.D.C. 2002) (parties to an arbitration agreement do not forgo their "substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum") (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991)).

Plaintiff's other citations in support of this argument are no more compelling.  Plaintiff cites to the language that Amtrak may "in its discretion, cancel, modify, restrict, or terminate the Program or any aspects or features of the Program at any time without prior notice."  But significantly, the "Program" language refers to the "Amtrak Guest Rewards Program."  (Def.'s Mem. in Supp. of Mot. to Compel 20.)  The portions Plaintiff selectively quotes are under the heading "Amtrak Guest Rewards Program Terms & Conditions" and under the subheading "Amtrak Guest Rewards Conditions."  (*Id.* at 20, 22-23.)  This loyalty program is not a bilateral contract; there is no dispute that Amtrak can reserve the right to modify or cancel it.  *See Lagen v.*

*United Cont'l Holdings, Inc.*, 774 F.3d 1124, 1128 (7th Cir. 2014) (enforcing airline's right to modify or cancel its loyalty program).

Again, the language and the fact that it occurs only in this discrete section make it clear that the right to modify only applies to Amtrak's Guest Rewards Program.  In fact, despite Plaintiff's attempt to dissemble about the context, even her quotations refer to "Program" and "Select, Select Plus or Select Executive membership tier" language that appears only in this section and not in the Arbitration Agreement.  There is nothing in this discrete section that lends any support to Plaintiff's argument that the right to modify applies to the wholly separate and unrelated Arbitration Agreement, and Plaintiff's attempt to suggest otherwise is misleading and unsupported.

Thus, again, *The Container Store* is wholly distinguishable.  In that case, the loyalty program itself contained the arbitration provision, so there was no dispute that the language that the terms of the loyalty program could be modified applied to the dispute resolution provision as well.  *The Container Store*, 904 F.3d at 75, 85 (concluding that "the loyalty program's terms gave the Container Store carte blanche to modify the terms at any time," including the dispute resolution provision). This is different than here, where the Terms and Conditions cover multiple discrete topics, and the right to modify is limited to a few sections, notably not including the bilateral Arbitration Agreement.

The fact that Amtrak reserved the right to modify some of its policies in the Terms and Conditions does not in any way make the Arbitration Agreement illusory, when there is no indication that the Arbitration Agreement may be similarly cancelled or modified.  Thus, the facts of this case are closer to *Craftworks*, 2018 WL 5297815, at *9, than *The Container Store*.  Though the Arbitration Agreement is not a standalone document like in *Craftworks*, it is a separate and discrete section, separately titled as an "Agreement."  Like in that case, there is no language in the

Arbitration Agreement that supports the argument that Amtrak has the right to modify or revoke its half of the promise to arbitrate. *See id.*

Plaintiff does not point to any evidence to demonstrate that the right to modify in these separate sections applies to, and therefore, invalidates the Arbitration Agreement. She simply argues the Arbitration Agreement's ***silence*** regarding the right to modify means she can selectively decide to incorporate external, unrelated provisions. (Pl.'s Opp'n 19 (arguing that the right to modify must apply to the Arbitration Agreement because there is no "exclusion" to demonstrate that it does not).) Plaintiff's argument fails because it is unsupported by any principles of contract interpretation, and also because it violates the FAA.

Indeed, even if the right to modify did apply to the Arbitration Agreement—which it does not—both the Terms of Use and the License Agreement reserve to Amtrak the right to modify some aspect of their terms, (Kaliel Decl. Ex. A at 2 ("Terms of Use"); *id.* at 10 ("License Agreement"), ECF No. 9-2), yet Plaintiff nonetheless urges their enforcement. The fact that Plaintiff objects to the language ***only*** when arguing it applies to an agreement to arbitrate demonstrates a double standard for arbitration agreements that must be rejected under the FAA. *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (the FAA's savings clause permits agreements to arbitrate to be invalidated by generally applicable contract defenses, but "not by defense[s] that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue").[4] Plaintiff cannot hold the Arbitration Agreement to a higher standard than other contracts.

---

[4] *The Container Store*, cited extensively by Plaintiff, is problematic for the same reason. *The Container Store* relies heavily on *Carey v. 24 Hour Fitness, USA, Inc.*, 669 F.3d 202, 205 (5th Cir. 2012), which has been criticized for expressly addressing only the issue of "whether arbitration agreements are illusory," rather than whether *all* contracts that contain unilateral modification provisions silent as to retroactive effect are illusory. *See, e.g., Carey*, 669 F.3d at 205 (stating that,

The Court should reject Plaintiff's attempt to selectively enforce contract provisions to escape arbitration because her argument defies precedent, the terms of the contract provisions themselves, and the FAA.

## III. PLAINTIFF MUST MAKE HER APPLICABILITY ARGUMENT TO THE ARBITRATOR, BUT EVEN IF THE COURT CONSIDERS IT, THE ARBITRATION AGREEMENT EXPLICITLY APPLIES TO PLAINTIFF'S CLAIMS

Plaintiff's only other argument against enforceability of the Arbitration Agreement is that the Terms and Conditions, and therefore the Arbitration Agreement, do not apply here at all.  This is a remarkable claim, given that Plaintiff does not dispute that she specifically agreed to the Arbitration Agreement when she purchased train tickets.  Instead, citing to older agreements and other parol evidence, Plaintiff argues that due to the nature of her claims, the Arbitration Agreement is inapplicable.  Specifically, Plaintiff argues that the Terms and Conditions, and therefore, the Arbitration Agreement, apply only to "Plaintiff's carriage on Amtrak."  (Pl.'s Opp'n 10-14.)   Because her claims focus on the accessibility of Amtrak's websites and mobile application, Plaintiff argues that the Terms of Use, dated August 5, 2016, and the License Agreement, dated July 2011, govern the relationship between the parties instead. (*See* Kaliel Decl. Ex. A at 2-8, 10-13.)  This is significant, Plaintiff argues, because the Terms of Use and the License Agreement contain forum selection clauses giving exclusive jurisdiction for any disputes to the federal courts in the District of Columbia.

---

if a party "can suddenly change the terms of the agreement to avoid *arbitration*, then the agreement was illusory from the outset")(emphasis added).  *See, e.g., Eiess v. USAA Fed. Sav. Bank*, 404 F. Supp. 3d 1240, 1256 (N.D. Cal. 2019) (because the rule in *Carey* singled out arbitration agreements for special treatment, it and the cases that rely on it, specifically including *The Container Store*, are preempted by the FAA).  This same concern is illustrated here by the fact that both the Terms of Use and the License Agreement reserve to Amtrak the right to modify, but Plaintiff nonetheless urges their enforcement. (Kaliel Decl. Ex. A at 2 ("Terms of Use"); *id.* at 10 ("License Agreement").

As with Plaintiff's illusoriness argument, there is no doubt that this argument has been delegated to the arbitrator's exclusive authority.  Plaintiff admits she agreed to the Arbitration Agreement, so she must present any argument that it is nonetheless inapplicable or unenforceable to the arbitrator.  But even if this Court considers the argument, it fails, because the Arbitration Agreement, which Plaintiff explicitly accepted as a final step to purchasing tickets, specifically covers her claims.

A.      **Under the Delegation Clause, Only the Arbitrator Has the Authority to Decide Whether the Arbitration Agreement Governs Plaintiff's Claims for Disability Discrimination and Retaliation**

This argument—whether the Arbitration Agreement is applicable to this dispute and whether Plaintiff's claims are within its scope—is squarely within the authority the parties delegated to the arbitrator to determine gateway issues.  (*See* Kaliel Decl. Ex. A at 19.)

Plaintiff acknowledges that the delegation clause exists, but she argues that this otherwise clear and unmistakable provision is rendered ambiguous because the two other (older) contracts that Plaintiff argues apply contain forum selection clauses for federal court.  This argument misses the mark, and Plaintiff cites no case in support of it.  *Levi Strauss & Co. v. Aqua Dynamics Sys., Inc.*, No. 15-CV-04718-WHO, 2016 WL 1365946 (N.D. April 6, 2016), cited for this proposition, does not help Plaintiff because in that case, the court found that there were conflicted provisions *in the same agreement*.  *Id.* at *8.  That is, because one provision in the contract suggested that the arbitrator should decide arbitrability, and the other provision suggested that the court might decide it, the court found there was no clear and unmistakable delegation of authority to the arbitrator.  *Id.*  This is not the case here.  Neither the Arbitration Agreement nor any of the Terms and Conditions contain any conflicting terms.

Thus, Plaintiff is bound by the delegation clause.  She can still argue that the Terms of Use and License Agreement apply instead of the more recent Arbitration Agreement, but because the

delegation clause is clear and unmistakable, and there is no dispute that the Agreement was formed,

Plaintiff must arbitrate her argument that the Arbitration Agreement does not apply to this dispute.

If, however, the Court considers this argument despite the clear delegation, the result is the

same.

> **B.    The Arbitration Agreement Specifically Applies to Plaintiff's Claims, and Plaintiff Specifically Agreed to It As Part of the Later-in-Time Terms and Conditions**

Once the moving party establishes there is an arbitration agreement, the party opposing

arbitration bears the burden to demonstrate there is no possible interpretation that it applies to the

claims at issue.  *See United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574,

589 (1960) (courts must defer to arbitration "unless it may be said with positive assurance that the

arbitration clause is not susceptible of an interpretation that covers the asserted dispute . . . [;

d]oubts should be resolved in favor of coverage.")  Plaintiff has failed to meet this standard.

> **1.    The Arbitration Agreement Specifically Applies to Plaintiff's Claims for Discrimination**

Notably, Plaintiff's argument is ***not*** that she did not agree to the Arbitration Agreement.

Nor does she argue that she agreed to the Arbitration Agreement without knowing or

understanding the terms of the Arbitration Agreement.  In this Circuit, "[o]ne who signs a contract

which he had an opportunity to read and understand is bound by its provisions." *Paterson v.

Reeves*, 304 F.2d 950, 951 (D.C. Cir. 1962); *see also Nur v. K.F.C., USA, Inc.*, 142 F. Supp. 2d

48, 51 (D.D.C. 2001) (rejecting plaintiff's argument that agreement to arbitrate was invalid

because he did not know the "implications" of agreeing); *Emeronye v. CACI Int'l, Inc.*, 141 F.

Supp. 2d 82, 86 (D.D.C. 2001) ("signature on a contract indicates 'mutuality of assent' and a party

is bound by the contract unless he or she can show special circumstances relieving him or her of

such an obligation").  In fact, under District of Columbia law, the party's intent is immaterial where

he or she has agreed in writing to an intent expressed to the contrary. *Signature Tech. Sols. v. Incapsulate, LLC*, 58 F. Supp. 3d 72, 81-2 (D.D.C. 2014) ("the written language embodying the terms of an agreement will govern the rights and liabilities of the parties, [regardless] of the intent of the parties at the time they entered into the contract, unless the written language is not susceptible of a clear and definite undertaking, or unless there is fraud, duress, or mutual mistake").

Instead, Plaintiff argues that the Arbitration Agreement on its face does not apply to her claims for discrimination, but this is affirmatively contradicted by the Arbitration Agreement itself. Indeed, the language is unequivocal. The Arbitration Agreement applies to "*all* claims" between Plaintiff and Amtrak, specifically including "claims for discrimination and failure to accommodate." (Tewari Decl. Ex. A at 19-20.) Here, Plaintiff's entire Complaint is premised on the theory that Amtrak has engaged in disability discrimination and failed to accommodate her visual disability:

> Plaintiff brings this civil rights action against Amtrak to enforce Title II of the ADA and the Rehabilitation Act, which require, among other things, that public accommodations that receive Federal financial assistance (1) not deny persons with disabilities the benefits of their services, facilities, privileges and advantages; (2) provide such persons with benefits that are equal to those provided to nondisabled persons; (3) provide auxiliary aids and services—including electronic services for use with Dynamic Font Text—where necessary to ensure effective communication with individuals with a visual impairment, and to ensure that such persons are not excluded, denied services, segregated, or otherwise treated differently than sighted individuals; and (4) utilize administrative methods, practices, and policies that provide persons with disabilities equal access to the goods, content, and services available on Amtrak's Websites and Apps.

(Compl. ¶ 11; *see* ¶¶ 74-99, 100-32 (First and Second Causes of Action for "Discrimination Prohibited by the American Disabilities Act"), ¶¶ 133-47 (Third Cause of Action for "Violation of Section 504 of the Rehabilitation Act of 1973"), ¶¶ 148-51 (Fourth Cause of Action for Declaratory Relief); *see also id.* at ¶ 149 (under the declaratory relief cause of action, alleging that Amtrak denied "visually impaired legally blind customers the full and equal access to the goods, services

and facilities of Amtrak's Websites and Apps, and by extension, its physical locations and intercity travel services, which Amtrak owns, operates and controls, and which it fails to comply with applicable laws including, but not limited to, Title II of the ADA and the Rehabilitation Act, prohibiting discrimination against the individuals with visual impairments").)   There is no interpretation that Plaintiff's claims under the ADA, the Rehabilitation Act, and for declaratory relief do not fall within the scope of the Arbitration Agreement.  *See id.*

### 2.    The Complaint Demonstrates that Plaintiff's Claims and the Remedies She Seeks Relate to Amtrak's Transportation Services

Ignoring the broad scope of the Arbitration Agreement, Plaintiff argues that the forum selection clauses in the website's Terms of Use and the mobile application's License Agreement apply instead because her claims focus on the use of the websites and mobile app, rather than actual travel on the train, which she alleges is the focus on the Terms and Conditions.[5]  Even if this were true, which it is not, it would be a distinction without a difference, since the purpose of the website is to ***facilitate travel***, whether by purchasing tickets, accessing schedules, or obtaining other information relevant to Amtrak's transportation services.  Moreover, Plaintiff's claims under the Americans with Disabilities Act and the Rehabilitation Act and the accommodations she seeks are specifically brought against Amtrak as a public transportation entity.  Plaintiff's attempt to divorce her claims from this reality fails.

Moreover, Plaintiff's Complaint does not reflect the limited scope Plaintiff now claims. Plaintiff alleges that Amtrak "is a passenger railroad service" "serving more than 500 destinations in 46 states and operating more than 300 trains daily over 21,400 miles of track."  (Compl. ¶ 22.)

---

[5] By arguing that these older agreements control the relationship between the parties to the exclusion of the Terms and Conditions, Plaintiff's argument necessarily assumes their enforceability.  If this Court or the arbitrator finds that the Arbitration Agreement is inapplicable or unenforceable, Plaintiff should be estopped from arguing against the enforceability of the Terms of Use and License Agreement, including their provisions limiting Amtrak's liability.

Thus, the significance of the websites and mobile app is they "allow consumers to research and purchase these services from anywhere."  (*Id.* at ¶ 23.)  The entire Complaint makes it clear that the use of the websites is inextricably intertwined with travel on the trains.  For instance, Plaintiff alleges that Amtrak denies "visually impaired legally blind customers the full and equal access to the goods, services and facilities of Amtrak's Websites and Apps, ***and by extension, its physical locations and intercity travel services***" by failing to comply with the ADA and the Rehabilitation Act.  (Compl. ¶ 149 (emphasis added); *see also id.* at ¶¶ 8, 48, 88, 121, Prayer at (B).).

Relatedly, the terms of the injunction Plaintiff seeks also apply to Amtrak's transportation services and physical locations.  Among other things, Plaintiff seeks an injunction requiring that Amtrak:

- make available "adequate information concerning transportation services . . . to enable users ***to obtain information and schedule service***" (Compl. ¶ 13(a) (emphasis added));

- "ensure that personnel are trained to proficiency, as appropriate to their duties, so that they ***operate vehicles and equipment safely and properly*** and assist and treat individuals with disabilities who use the service in a respectful and courteous way" (*id.* at ¶ 13(b) (emphasis added));

- "maintain in operative condition those features of facilities and vehicles that are required to ***make the vehicles and facilities readily accessible*** to and usable by individuals with visual impairments" (*id.* at ¶ 13(c) (emphasis added));

- "develop and implement non-discriminatory policies and procedure to ensure . . . that individuals who are visually impaired are informed of the availability of

auxiliary aids and services during interactions with Amtrak, ***including while traveling***" (*id.* at ¶ 13(e)(iii) (emphasis added));

- "revise and/or update Amtrak's training and supervision programs to educate officers and employees about their obligation to . . . inform individuals who are visiually impaired of the availability of auxiliary aids and services ***while traveling***" (*id.* at ¶ 13(f)(iii) (emphasis added));

Thus, Plaintiff's attempts to recast her claims as unrelated to travel are baseless and futile.

### 3. The Terms and Conditions Apply to this Dispute Because They Are Later in Time, and Plaintiff Specifically Assented to Them and the Arbitration Agreement

Even if the Terms of Use and License Agreement previously could have applied to Plaintiff's discrimination claims, they are now superseded by Plaintiff's acceptance of the Terms and Conditions. In the District of Columbia, a contract "containing a term inconsistent with a term of an earlier contract between the same parties regarding the same subject matter is interpreted to rescind the inconsistent term in the earlier contract." *Nat'l R.R. Passenger Corp. v. ExpressTrak, L.L.C.*, 330 F.3d 523, 530 (D.C. Cir. 2003). Here, the Terms of Use is dated August 5, 2016, and the License Agreement is dated July 2011. Amtrak does not require its customers to accept the Terms of Use and License Agreement when purchasing tickets. Because Plaintiff affirmatively agreed to the January 10, 2019 Terms and Conditions, the requirement to arbitrate replaces the inconsistent federal court forum selection clause in the earlier agreements, and the Arbitration Agreement controls the relationship between Amtrak and Plaintiff regarding the claims Plaintiff brings in this action. Indeed, the forum selection clauses in the earlier documents providing jurisdiction to federal district court are directly contradicted by the later-in-time Arbitration Agreement that Plaintiff affirmatively accepted. Thus, even if those agreements could be deemed applicable by the mere use of the website or application, once a customer affirmatively agrees to

the Terms and Conditions, those later in time provisions control, including the Arbitration Agreement.

Plaintiff's argument that the Terms of Use and License Agreement control because they are "more specific" to her claims than the Arbitration Agreement is also wrong.  As an initial matter, it is simply not the case that the Terms of Use and License Agreement are "more specific" to her claims.  The Terms of Use and License Agreement address issues such as intellectual property, privacy matters and contest rules.  There is nothing in the Terms of Use or License Agreement that references discrimination or the accessibility of Amtrak's website and mobile application for users who are blind or have low vision.  In contrast, the Arbitration Agreement specifically references claims for discrimination and failure to accommodate.

More importantly, even if Plaintiff's factual premise about specificity were correct, there is no legal basis for this argument.  Though it is a general rule of contact interpretation that specific terms are given greater weight than general terms, there is no support for the argument that "specific" language in a wholly different contract can control over a more recent contract.  Plaintiff cites *Washington Automotive Co. v. 1828 L St. Assocs.*, 906 A.2d 869 (D.C. 2006) for this proposition, but it considered a lease that included a specific and detailed process for determining fair market value, which the court held controlled over the general arbitration language ***in the same contract***.  *Id.* at 880.  Even if Plaintiff could demonstrate that the Terms of Use and License Agreement were more "specific," this case is inapposite to the situation here, where Plaintiff is bound by a recent agreement to arbitrate but seeks to apply terms from wholly separate earlier contracts.

Plaintiff has failed to come close to meeting her burden to demonstrate that her claims are not covered by the Arbitration Agreement.  She must bring her claims in individual arbitration as she agreed.

## IV.   THE COURT SHOULD DISMISS THIS ACTION

Because all of the issues raised in Plaintiff's Complaint must be submitted to arbitration, and because Plaintiff does not make any valid arguments to the contrary, this action should be dismissed.  *See Aliron Int'l, Inc. v. Cherokee Nation Indus.*, Civil Action No. 05-151 (GK), 2006 U.S. Dist. LEXIS 44002, at *9-10 (D.D.C. June 28, 2006), *aff'd*, 531 F.3d 863 (D.C. Cir. 2008); *see also Ryan v. BuckleySander, LLP*, 69 F. Supp. 3d 140, 149 (D.D.C. 2014) (dismissing case during pendency of arbitration because "all claims [were] subject to arbitration."); *Shatteen v. Omni Hotel Mgmt. Corp.*, 113 F. Supp. 3d 176, 182-83 (D.D.C. 2015) (complaint claims to arbitration and dismissing case).

## V.   CONCLUSION

The FAA requires that Plaintiff resolve her claims on an individual basis in binding arbitration pursuant to the Arbitration Agreement, and Plaintiff makes no compelling arguments to the contrary.  Accordingly, Amtrak respectfully requests that this Court issue an order enforcing the Arbitration Agreement as written, and (1) strike the class action allegations from the Complaint; (2) order Plaintiff to prosecute her claim through individual arbitration only; and (3) dismiss this action.

Dated:  January 10, 2020

/s/ Alison N. Davis
Alison N. Davis (D.C. Bar No. 429700)
Lindsay M. Neinast (DC Bar No. 998458)
LITTLER MENDELSON, P.C.
815 Connecticut Avenue, NW, Suite 400
Washington, DC  20006-4046
202.842.3400
202.842.0011 (Facsimile)
andavis@littler.com
lneinast@littler.com

Counsel for Defendant National Railroad
Passenger Corporation